1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

### EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| MARY PACHECO, | ) 1:09cv02026 DLB |
| | ) |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

16

## BACKGROUND

Plaintiff Mary Pacheco ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

On January 6, 2004, Plaintiff filed an application for DIB. After being denied initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing and denied benefits on October 28, 2005. AR 89-97. Plaintiff did not appeal the decision.

---

[1] References to the Administrative Record will be designated "AR," followed by the relevant page number.

On December 19, 2005, Plaintiff filed a new application for DIB and an application for SSI, alleging disability since April 1, 2005, due to Hepatitis C and cirrhosis of the liver.  AR 174-78, 179-83, 202-210.  After being denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ.  AR 101-05, 107-11, 120-26.  ALJ Daniel G. Heely held a hearing and subsequently denied benefits on May 23, 2008.  AR 70-82.  The Appeals Council vacated the decision and remanded the case because the hearing record could not be located.  AR 86-88.  Following a *de novo* hearing, ALJ Heely denied benefits on May 29, 2009.  AR 14-29.  The Appeals Council denied review on September 6, 2009.  AR 1-4.

Hearing Testimony

ALJ Heely held a supplemental hearing on December 23, 2008, in Stockton, California.  Plaintiff appeared with her attorney, Jeffrey Milam.  Vocational expert ("VE") George Meyers also appeared and testified.  AR 17, 32.

Plaintiff testified that she finished her GED.  After that, she went to job corp and studied clerical work for the railroad.  She also received a certificate of medical assistance from junior college.  Additionally, she had 240 hours of phlebotomist training at the VA hospital.  She was no longer in school or working.  AR 33-35.

Plaintiff last worked about a year or two before the hearing.  She worked for RHI Staffing in 2005 and in 2006, doing clerical temp jobs.  From April or May to September 2006, she worked as a temporary medical records file clerk at a hospital in Turlock, California.  She was paid $9.00 an hour and averaged 40 hours per week.  AR 36-38.  When the job ended, she received unemployment until March 2007.  She did not have to do job searches in order to qualify for unemployment.  AR 38-39.

In April 2005, Plaintiff was having health issues with her liver and she was let go from her job.  She got sick and started going to the hospital.  She did not work for the remainder of 2005.  In 2006, she worked for two different companies.  AR 39-40.

Plaintiff claimed that she could not work full-time now because her legs and ankles swell up due to hepatitis C and she might have kidney stones.  She does not smoke, drink or use illegal

1   drugs.  She takes prescription medications, which cause cramps.  She is not receiving any mental

2   health treatment and she has not been referred for any treatment.  AR 41-43.

3       Plaintiff lives with her husband and 15-year-old son.  Her husband works during the day.

4   When he is at work, her son is at school and she is home alone.  During the day, she watches TV

5   or reads a book.  She also plays computer games.  AR 43-44.  She also is "on the go" with her

6   pastor.  She attends services on Thursday evenings from 7:00 to 9:00 and on Sunday mornings

7   from 10:00 to 11:30.  AR 45.

8       In response to questions from her attorney, Plaintiff reported that her condition requires

9   her to lie down most of the time.  She explained that if she is on her feet too much, then her legs

10  and ankles will get swollen.  Although her energy level is low, she feels rested after sleep.  At the

11  church services, she has to sit in the back and prop up her feet.  AR 46-47.

12      Plaintiff confirmed that she was hospitalized in 2003 for cirrhosis.  She had Interferon

13  treatment, which stopped in the middle of 2004.  She still had swelling in her legs at least

14  through early 2005.  She could not have worked while getting Interferon, but her disease got

15  better "[t]o a point" and she returned to work.  At her last job, she was standing about two hours

16  and sitting about six hours.  She had to elevate her feet and they had a little slope for her about a

17  foot high.  AR 48-49.

18      Plaintiff testified that she could do that same job today if they let her slope her feet.  She

19  further testified that she would be working today if allowed that kind of accommodation, even if

20  she was taking Interferon.  AR 49-50.  In the past, her Interferon treatments were every two days

21  and she was sick the whole day after treatments.  She would not have been able to go to work

22  then, but she is not currently on Interferon.  She only takes medication to help her liver and to

23  release water tension in her legs.  AR 50-52.

24      Plaintiff also reported that she has back pain.  The pain bothers her if she is sitting or

25  standing more than 20 minutes.  AR 52-53.

26      Plaintiff indicated that "Dr. Plotsker" is her specialist liver surgeon.  He told her that she

27  had end-stage liver disease and would need a transplant.  His opinion that she could not be at a

28  workplace three or four hours a day was not wrong.  Plaintiff explained that she could be at the

1    workplace if she was in need of money.  She did not think that she could work an eight-hour day

2    job five days a week because her feet would "really be swollen" and she would have to "really

3    push" herself if she was going to go to work.  When she pushes herself, she gets weaker because

4    her legs, feet and ankles get more swollen.  AR 53-54.

5        In response to clarifying questions from the ALJ, Plaintiff testified that she had to get up

6    and walk around about three hours at her last job.  The other five hours she was seated with her

7    legs elevated.  AR 55.

8        The VE also responded to questions from the ALJ and agreed to identify any testimony

9    that differed from the Dictionary of Occupational Titles ("DOT").  The VE testified that Plaintiff

10   had past work as an administrative clerk, DOT 219.362-010, which is light, semi-skilled, SVP.

11   Her past work as a house mother is in the DOT as household manager, DOT 301.137-010, which

12   is light, skilled SVP 6.  She also worked as a medical assistant, 079.362-010, which is light,

13   skilled, SVP; a phlebotomist, 079.364-022, which is light, semi-skilled SVP 3; and a file clerk,

14   206.367-014, which is light, semi-skilled, SVP 3.  From her past work, she had transferable skills

15   that included familiarity with office equipment, directing and coordinating work completion,

16   overseeing people, familiarity with medical terminology and medical procedures, and doing

17   blood draws.  AR 56-57.

18       For the hypothetical questions, the ALJ asked the VE to assume a person of the same age,

19   education and work history as Plaintiff.  For the first hypothetical, the ALJ also asked the VE to

20   assume an individual that could sit, stand, and walk less than two hours each in a normal

21   workday, could lift and/or carry less than 10 pounds even occasionally, could never climb,

22   balance, stoop, kneel, crouch, crawl or work around hazards and who would need numerous

23   unscheduled rest breaks throughout the workday.  The VE testified that there would not be any

24   past-relevant or other full-time jobs that could be done.  AR 57.

25       For the second hypothetical, the ALJ asked the VE to assume an individual that could

26   work at jobs involving sitting, standing, and walking six out of eight hours each with normal

27   breaks, and could lift and/or carry 20 pounds occasionally and 10 pounds frequently.  The VE

28   testified that a person with those limitations could perform all of Plaintiff's past jobs.  There also

4

1  would be other jobs in California, including receptionist, DOT 237.367-038, which is sedentary,

2  semi-skilled, SVP 4, with 10,900 jobs in California; appointment clerk, 237.367-010, which is

3  sedentary, semi-skilled, SVP 3, with 6,000 jobs in California; and cashier, 211.462-010, which is

4  light, unskilled, SVP 2, with 81,000 jobs in California.  The VE confirmed that his testimony did

5  not differ from the DOT.  AR 57-58.

6                          Medical Record

7        Plaintiff began Interferon treatment for her hepatitis-C cirrhosis in July 2003 through

8  UCSF Medical Center.  AR 296, 299.  She reportedly stopped interferon/ribavirin therapy in or

9  around October 2004, "although her response had not been optimal."  AR 286-87.

10       On March 21, 2005, Plaintiff underwent an abdominal ultrasound for cirrhosis.  The

11  ultrasound showed a hepatic cyst and a questionable hepatic mass.  AR 273.

12       At UCSF Medical Center, Plaintiff underwent a CT of the abdomen on April 15, 2005.

13  The CT showed a cirrhotic liver with a simple cyst in the right hepatic lobe, but no hepatic

14  lesions.  AR 285.

15       In November 2005, Plaintiff complained of right side pain for two weeks.  AR 259.  A

16  CT scan of her abdomen and pelvis on November 29, 2005, revealed no identifiable mass.  AR

17  257.

18       On March 8, 2006, Plaintiff's physician noted that Plaintiff missed her last appointment

19  due to a "birthday."  AR 318.

20       An abdominal ultrasound on April 25, 2006, revealed a hepatic cyst.  AR 313.

21       In May 2006, Plaintiff reported increased swelling of her lower extremities.  AR 308.

22       On June 19, 2006, Plaintiff reported edema and decreased memory at times.  On

23  examination, she had lower extremity edema, improved with medication. Her mood and affect

24  were normal.  AR 325.

25       In July 2006, Plaintiff again had lower extremity edema on examination.  Her memory,

26  mood and affect were normal.  AR 322.

27       On October 2, 2006, Plaintiff was noted to have a flat affect.  AR 320.

28

1    On October 10, 2006, Plaintiff had a 20 pound weight gain along with increased fluid

2    retention.  Her mood was euthymic.  AR 319.

3    On November 3, 2006, Plaintiff was noted to have less swelling in her legs.  Her memory,

4    mood and affect were normal.  She was euthymic.  AR 379.

5    On November 16, 2006, Plaintiff's lower extremity swelling was noted to be improved.

6    Her memory, mood and affect were normal.  She was euthymic.  AR 375.

7    On November 29, 2006, Mark Robinson, M.D., completed a consultative internal

8    medicine evaluation.  Plaintiff's chief complaint was swollen feet due to her liver.  She reported

9    increased swelling with standing or prolonged sitting.  She denied any issues with her activities

10   of daily living except for fatigue, which generally affected her pace.  She admitted a history of

11   alcohol abuse and a history of injecting heroin with shared needles.  AR 327-28.

12   On physical examination, Dr. Robinson noted pitting edema bilaterally to the knees, but

13   her coordination, station and gait were normal.  She complained of lower back pain when

14   performing a heel-to-shin maneuver.  Her strength and deep tendon reflexes were normal.  AR

15   328-29.  Dr. Robinson diagnosed her with cirrhotic liver disease due to chronic hepatitis C and

16   lumbosacral back pain and dysfunction, incidentally noted.  AR 329.

17   Dr. Robinson opined that Plaintiff could be expected to stand and walk two hours in

18   eight-hour workday based on the severity of her liver disease and associated fatigue.  She could

19   sit six hours with minor limitation due to problems with lower extremity edema and the need to

20   change positions and elevate her legs when possible.  AR 329.  She could be expected to lift and

21   carry 20 pounds occasionally and 10 pounds frequently.  She occasionally could bend, reach

22   overhead or lift.  AR 330.

23   Plaintiff failed to attend an appointment with Dr. Veko Vahamaki, D.O., a primary care

24   physician from Stanislaus County Health Services Agency, on December 28, 2006.  AR 384.

25   On December 29, 2006, D. Sharbaugh, a state agency medical consultant, completed a

26   Physical Residual Functional Capacity Assessment form.  Dr. Sharbaugh opined that Plaintiff

27   could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk

28   about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday, and could

push and/or pull without limitation.  AR 332.  She had no postural, manipulative, visual, communicative or environmental limitations.  AR 332-34.

On January 4, 2007, Allen Middleton, Ph.D., a state agency consultant, completed a Psychiatric Review Technique form.  He opined that Plaintiff did not have a severe mental impairment.  AR 344.

Plaintiff again failed to show for an appointment with Dr. Vahamaki.  AR 384.

On March 27, 2007, Dr. Vahamaki sent a letter to Dr. Richard Plotzker with a number of questions.  Handwritten responses from an unknown author indicated that there was no benefit to repeating interferon treatment.  With regard to a liver transplantation option, the unknown author also responded that Plaintiff did not follow through at UCSF in May 2006.  Dr. Vahamaki noted that Plaintiff had been unable to secure employment secondary to her lower extremity edema and the unwillingness of employers to allow for needed breaks.  Although the responding person reported that Plaintiff's prognosis was unknown at the present, the author also opined that Plaintiff's prognosis warranted disability.  AR 360.

On May 8, 2007, Dr. Vahamaki prepared a letter regarding Plaintiff, who had been his patient since December 2005.  According to Dr. Vahamaki, Plaintiff suffered from a worsening hepatitis C infection and multiple interferon treatments were not successful in slowing the progression of her liver disease.  Plaintiff had cirrhosis, the final state of deterioration in liver disease, which was confirmed by her liver specialist, Dr. Plotzker.  Dr. Vahamaki stated that Dr. Plotzker joined him in recommending Plaintiff for full disability benefits.  AR 355.

On that same date, Dr. Vahamaki also completed a Questionnaire.  He opined that Plaintiff's medical problems precluded her from performing any full-time work at any exertional level, including the sedentary level.  Her primary impairment was hepatitis C cirrhosis with a history of hepatic encephalopathy.  Dr. Vahamaki based his opinion on objective findings of jaundice, weakness, laboratory values and specialist confirmation.  He reported that Plaintiff could sit one hour and stand and/or walk 20 minutes at one time.  Over an 8-hour period, she could sit 4 hours and stand and/or walk one hour.  She must lie down or elevate her legs for 2

hours during an 8-hour day.  She could not lift more than 5-8 pounds.  He believed that she had been disabled to this degree since May 1, 2007.  AR 356.

On June 15, 2007, Plaintiff returned to UCSF to determine if she should be considered for a liver transplant.  A review of her systems was negative and she had only trace lower extremity edema on physical examination.  The UCSF physician opined that Plaintiff was "currently still 'too well'" to be placed on a liver transplant list.  If her bilirubin increased to over 2, if she developed a hepatocellular carcinoma or if she developed problematic ascites, she could be re-referred for consideration of transplant.  AR 362-64.

Plaintiff failed to attend an appointment with Dr. Vahamaki on June 21, 2007.  She was to be discharged from "HSA" for no shows, but a dismissal letter was never sent.  AR 382.

On August 21, 2007, Plaintiff complained of lower extremity swelling.  On examination she had bipedal edema.  Her memory, mood, affect, insight and judgment were normal.  AR 370.

On June 26, 2008, Dr. Plotzker's treatment notes indicated that Plaintiff was doing okay overall.  AR 388.

On December 11, 2008, Dr. Plotzker reported that Plaintiff continued to do well and she was being evaluated for renal stones.  AR 387.

ALJ's Findings

The ALJ first explained that Plaintiff was found disabled in a prior hearing decision dated October 28, 2005.  The presumption of continuing non-disability applied to the unadjudicated period after October 28, 2005.  As Plaintiff identified back pain as a new impairment, the ALJ found that she had rebutted the presumption.  AR 17-18.

As to the current application, the ALJ found that Plaintiff had engaged in substantial gainful activity from April 1, 2006, to October 14, 2006.  She had not engaged in substantial gainful activity since October 14, 2006.  She had the severe impairments of hepatitis C, cirrhosis, fatigue and back pain.  Despite these impairments, the ALJ determined that Plaintiff retained a RFC for the full range of light work.  With this RFC, Plaintiff could perform her past relevant work as an office clerk, phlebotomist or mail office clerk.  AR 21-28.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

1    C.F.R. §§ 404.1520 (a)-(g), 416.920 (a)-(g).  Applying the process in this case, the ALJ found

2    that Plaintiff: (1) had engaged in substantial gainful activity from April 1, 2006 to October 14,

3    2006, but not since that time; (2) has an impairment or a combination of impairments that is

4    considered "severe" (hepatitis C, cirrhosis, fatigue and back pain) based on the requirements in

5    the Regulations (20 C.F.R. § 416.921); (3) does not have an impairment or combination of

6    impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,

7    Regulations No. 4; and (4) she could perform her past relevant work as an office clerk,

8    phlebotomist or mail office clerk.  AR 21-28.

9        Here, Plaintiff contends that the ALJ committed error by (1) rejecting the opinions of her

10    physicians; (2) rejecting her testimony; and (3) providing an incomplete hypothetical to the

11    vocational expert.

12                             **DISCUSSION**

13    A.    Evaluation of Physician Opinions

14        Plaintiff contends that the ALJ committed reversible error when he failed to give valid

15    reasons for rejecting the opinions of Drs. Robinson, Vahamaki and Plotzker.

16        Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

17    who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

18    (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

19    physicians).  As a general rule, more weight should be given to the opinion of a treating source

20    than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

21    647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another

22    doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

23    1391, 1396 (9th Cir.1991).  Even if the treating doctor's opinion is contradicted by another

24    doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

25    reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

26    F.2d 499, 502 (9th Cir.1983).

27        The opinion of an examining physician is, in turn, entitled to greater weight than the

28    opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir.1990);

1  *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating

2  physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

3  uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion

4  of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

5  can only be rejected for specific and legitimate reasons that are supported by substantial evidence

6  in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

7      The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

8  that justifies the rejection of the opinion of either an examining physician or a treating physician.

9  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can

10  reject the opinion of a treating or examining physician, based in part on the testimony of a

11  nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th

12  Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir.1995).  For

13  example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating

14  physician, "the ALJ did not rely on [the nonexamining physician's] testimony *alone* to reject the

15  opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in

16  original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ

17  also relied on laboratory test results, on contrary reports from examining physicians, and on

18  testimony from the claimant that conflicted with her treating physician's opinion.  *Id.* at 751-52.

19      Dr. Robinson

20      Plaintiff contends that the ALJ gave no reasons for rejecting Dr. Robinson's opinion.

21  Opening Brief, p. 7.  Dr. Robinson opined that Plaintiff could stand and walk two hours and sit

22  six hours in an eight-hour workday.  AR 329.  He also opined that she could lift and carry 20

23  pounds occasionally, 10 pounds frequently, and occasionally could bend and reach overhead or

24  lift.  AR 330.  Plaintiff's argument regarding Dr. Robinson's opinion is curious given his

25  determination that she was capable of performing at least sedentary work.  Social Security Ruling

26  ("SSR") 83-10 (sedentary work requires a claimant to be able to sit six hours and stand or walk

27  no more than two hours out of an eight-hour workday); 20 C.F.R. §§ 404.1567(a), 416.967(a).

28

(sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools).  Plaintiff has failed to support any argument that Dr. Robinson limited her to less than sedentary work.

Furthermore, the ALJ was justified in rejecting Dr. Robinson's opinion.  It is clear from the record that the ALJ considered Plaintiff's own actions and testimony in rejecting Dr. Robinson's limitation to sedentary work.  AR 23-24.  An ALJ need not recite any magic words to reject a physician's opinion so long as the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt a physician's opinion. *Magallanes,* 881 F.2d at 755.

In this case, Plaintiff engaged in substantial gainful activity from April 1, 2006, to October 14, 2006, as a temporary filing clerk.[2]  At the hearing, Plaintiff unequivocally testified that she only stopped working because the temporary job ended, not because of her disability. She further testified that she could return to this work if allowed to use a little slope for her feet. AR 49-50.

Plaintiff attempts to rehabilitate her testimony, arguing that she never testified that she could return to her work full-time as a file clerk.  According to the record, Plaintiff had been working 40 hours a week as a temporary medical records file clerk.  AR 38-39.  At the hearing, Plaintiff affirmed that she could do the "same job today" if they let her slope her feet and would be working today if somebody allowed her that kind of accommodation.  AR 49- 50.  She also reported that she could work if she was in need of money.  AR 54.  Later, she claimed she could not work at an eight-hour day job five days a week, noting that she would have to really push herself if she was going to go to work.  AR 54-55.

Assuming that Plaintiff provided conflicting testimony, courts do not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone.  The Court must uphold the ALJ's decision where the

---

[2] Plaintiff has not disputed this determination by the ALJ.  Instead, Plaintiff both proposes an onset date of November 2006 and argues that she was unable to perform full time work at even the sedentary level since May 1, 2007.  Opening Brief, pp. 13, 16.

1    evidence is susceptible to more than one rational interpretation. *Magallanes*, 881 F.2d at 750.

2    Here, it was rational for the ALJ to interpret Plaintiff's testimony that she could return to her

3    "same job" as an admission that she could return to her full-time work with a slope for her feet.

4    As reported by the VE, the "same job" is classified as light work. AR 56-57. Given the evidence

5    and testimony that she could return to light work, the ALJ appropriately rejected Dr. Robinson's

6    limitation to sedentary work and afforded more weight to the opinion of the state agency

7    physician, Dr. Sharbaugh, who found she could perform light work. AR 25, 26.

8           Additionally, in reaching the RFC in this case, the ALJ discussed specific medical

9    evidence in the record demonstrating that Plaintiff's condition remained relatively stable. For

10   example, the ALJ reviewed medical records, including a consultation at UCSF in June 2007,

11   where the physician noted that Plaintiff's bilirubin had remained relatively stable since 2002.

12   AR 25, 364. The consultant also opined that Plaintiff was "too well" to be placed on a liver

13   transplant list and she was to continue her medication for mild lower extremity edema. AR 364.

14   The ALJ also reviewed treatment records demonstrating stability in Plaintiff's condition,

15   including medical testing of her bilirubin, her International Normalized Ratio and her

16   prothrombin time, along with Dr. Plotzker's treatment notation in June 2008 that Plaintiff was

17   doing okay overall and the notation in December 2008 that she continued to do well. AR 25,

18   387-88. These records demonstrated that Plaintiff's condition had not deteriorated to warrant a

19   change in the prior RFC determination that she could perform the full range of light work. AR

20   95. Even where, as here, the claimant is able to overcome the presumption of continuing non-

21   disability, certain prior findings, such as RFC are entitled to res judicata absent new and material

22   evidence on the issue. *Chavez v Bowen*, 844 F.2d 691, 694 (9th Cir. 1988). Thus, the treatment

23   records showing relative stability did not support Dr. Robinson's change in RFC.

24          Insofar as Plaintiff suggests that the ALJ could not rely on the opinion of the non-

25   examining state agency physician to reject Dr. Robinson's opinion, this suggestion is not correct.

26   As discussed, the ALJ did not rely solely on the opinion of the state agency physician to reject

27   Dr. Robinson's opinion. Instead, the ALJ also relied on treatment records, contrary reports from

28   examining physicians, and on testimony from Plaintiff that conflicted with his opinion. This is

1   not error. *Magallanes*, 881 F.2d at 751-52 (ALJ properly relied on opinion of non-examining

2   physician, where supported by laboratory test results, contrary reports from examining

3   physicians, and on testimony from the claimant that conflicted with physician's opinion).

4                              Dr. Vahamaki

5        Plaintiff next contends that the ALJ did not provide valid reasons for rejecting the

6   opinion of her primary care physician, Dr. Vahamaki.  It is true that the medical opinion of a

7   claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421

8   (9th Cir. 1988).  However, an ALJ may reject a contradicted treating physician's opinion on the

9   basis of clear findings that set out specific, legitimate, reasons for the rejection.  *Lester v. Chater*,

10  81 F.3d 821, 830 (9th Cir. 1995).

11       Here, the ALJ expressly considered Dr. Vahamaki's opinion that Plaintiff was unable to

12  perform any full-time work at any exertional level due to hepatitis C cirrhosis.  AR 26.  However,

13  the ALJ determined that the treatment records did not document symptoms of the severity alleged

14  by Dr. Vahamaki.  AR 26.  Where a treating physician's conclusions about a claimant's functional

15  limitations "are not supported by his own treatment notes," the ALJ may reject that opinion.

16  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir.2003).  As discussed above, the ALJ

17  summarized Dr. Vahamaki's treatment records, which demonstrated that Plaintiff's condition

18  was relatively stable during the relevant time period.  With the exception of a higher bilirubin

19  count in 2008, Plaintiff points to no evidence demonstrating that her condition degraded or

20  supporting the functional limitations imposed by Dr. Vahamaki.  AR 387, 389.

21       Further, and more importantly, the ALJ also properly relied on the contrary opinion of the

22  non-examining state agency physician, Dr. Sharbaugh, and Plaintiff's own testimony that

23  conflicted with Dr. Vahamaki's opinion.[3]  *Magallanes*, 881 F.2d at 751-52.

24       The ALJ's rejection of Dr. Vahamaki's opinion was supported by substantial evidence

25  and free of legal error.

26  _____

27      [3]The ALJ also discounted Dr. Vahamaki's opinion by considering the contradictory opinion of Dr.
    Robinson. The contrary opinion of an examining source constitutes a "specific and legitimate reason" for rejecting
28  opinion of a treating source.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Andrews,* 53 F.3d at 1041.

Dr. Plotzker

Plaintiff contends that the ALJ's rationale for rejecting Dr. Plotzker's opinion is fatally flawed. The Court disagrees.

As an initial matter, there is no evidence in the record of an opinion rendered directly by Dr. Plotzker aside from treatment notations. Rather, there are two instances in the record purporting to contain Dr. Plotzker's opinion. First, there is a statement in a letter from Dr. Vahamaki that Dr. Plotzker joined him "in recommending [Plaintiff] for full disability benefits." AR 355. This is not direct evidence of Dr. Plotzker's opinion. Furthermore, even if Dr. Plotzker opined that Plaintiff should receive full disability benefits, this opinion does not warrant special significance. The determination of a claimant's ultimate disability is reserved to the Commissioner, and a physician's opinion on the matter is not entitled to deference. 20 C.F.R. §§ 404.1527(e), 416.927(e); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) ("Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ.").

Second, there is evidence that Dr. Vahamaki sent Dr. Plotzker some questions in a letter. AR 360. The ALJ addressed Dr. Plotzker's purported responses to the questions. AR 26. Specifically, the ALJ stated as follows:

> Dr. Vahamaki also apparently asked Dr. Plotzker some questions in a letter. It is unclear who jotted down the answers to the questions. The questions and responses included:

> What is the prognosis in Hepatitis C cirrhosis when liver enzymes are elevated (AST 166), thrombocytopenia is present (43,000) and last viral count was greater than 700,000? Unknown at present.

> Finally, the patient has been unable to secure employment secondary to her lower extremity edema and the unwillingness of employers to allow for needed breaks. Does Mrs. Pacheco's prognosis warrant disability? Yes (Ex. 11F).

> However, the undersigned give little weight to these statements. The person who responded to these questions did not explain how a prognosis that was unknown could warrant disability. If the responder was answering the question on the basis of the clamant's inability to find employment, such a factor that is unrelated to the medically determinable impairment cannot be considered in making a determination of disability. Dr. Plotzker reported in December 2008 that the claimant "continues to do well."

1   AR 26.

2          The ALJ correctly noted that it was "unclear who jotted down the answers to the

3   questions" as the handwritten responses were not signed or initialized. AR 26, 360. This is a

4   legitimate basis for assigning less weight to the opinion because it is not clearly written by an

5   acceptable medical source. *See, e.g.,* 20 C.F.R. §§ 404.1513(a), 416.913(a) ("We need evidence

6   from acceptable medical sources to establish whether you have a medically determinable

7   impairment(s)."); *see also Bergfeld v. Barnhart*, 361 F.Supp.2d 1102, 1111 (D. Ariz. 2005)

8   (holding that ALJ should not have considered unsigned medical report from a consultative

9   physician).

10         Assuming that Dr. Plotzker authored the responses, the ALJ also provided legitimate

11  reasons for rejecting his opinion. First, the ALJ appropriately questioned how an unknown

12  prognosis could warrant disability. An ALJ is entitled to make logical inferences from the

13  record. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

14         Second, the ALJ noted that Plaintiff's inability to find employment because of needed

15  breaks was not a medical consideration. AR 26. Plaintiff argues that an inability to find

16  employment because an impairment requires accommodation must be considered in making a

17  determination of disability, which is the reason a vocational expert addresses non-exertional

18  restrictions. However, the application of vocational factors, like the ultimate determination of

19  disability, is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527, 416.927. In other

20  words, the availability of work is not the proper basis for a medical determination. Here, neither

21  the questions nor the responses to Dr. Vahamaki's letter provided a medical opinion regarding

22  what Plaintiff could still do despite her impairments or her physical restrictions. 20 C.F.R §

23  404.1527(a)(2) ("Medical opinions are statements from physicians. . . that reflect judgments

24  about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms,

25  diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's]

26  physical or mental restrictions.").

27         Third, and lastly, the ALJ gave little weight to the responses because of contradictory

28  treatment notes from Dr. Plotzker observing that Plaintiff continued to do well in 2008. AR 26,

387. A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Magallanes*, 881 F.2d at 751. Plaintiff contends that Dr. Plotzker's report was not a statement that she was improving. Conversely, it was not a statement that her condition was in decline. As discussed, the ALJ thoroughly considered evidence in the medical record that Plaintiff's condition remained relatively stable throughout the relevant time period. Further, Plaintiff herself testified that she could perform her prior work if she had a little slope is consistent with Dr. Plotzker's notation that she was doing well. AR 49.

The Court acknowledges Plaintiff's argument that her bilirubin had increased to 2.2 by December 9, 2008, which is a point at which she could "be re-referred for consideration of transplant." AR 364, 389. However, Plaintiff is not a medical doctor and there is no indication from Dr. Plotzker's treatment notes that Plaintiff's condition in 2008 warranted referral for consideration of a transplant. Plaintiff also admits that "she is not yet so deteriorated that she requires a liver transplant." Opening Brief, p. 12.

To the extent that Plaintiff argues that the ALJ had a duty to further develop the record regarding Dr. Plotzker's opinion, this argument lacks merit. It is Plaintiff's burden to produce full and complete medical records, not the Commissioner's. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999). However, when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record. *Tonapetyan*, 242 F.3d at 1150. The ALJ may discharge this duty in one of several ways, including subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Id.* Here, the ALJ expressly left the record open for Plaintiff's counsel to submit records from the health service agency and Dr. Plotzker. AR 32-33. Thus, the ALJ adequately discharged his duty to develop the record.

Based on the above, the ALJ's rejection of Dr. Plotzker's opinion was supported by substantial evidence and free of legal error.

B.    Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting her testimony.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir.2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide " 'specific, cogent reasons for the disbelief.' " *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive. *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony ... An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's testimony was not credible for several reasons.  First, the ALJ found Plaintiff's claims were belied by her substantial gainful activity in 2006 and the admission that she stopped working because the job ended, not because her medical condition worsened.  AR 27.  Evidence that a claimant actually worked during period of claimed disability clearly supports an adverse credibility determination.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ provided clear and convincing reasons to reject subjective testimony, including claimant continuing to work "under the table" after his date last insured); *Perkins v. Astrue*, 535 F.Supp.2d 986, 993 (C.D. Cal. 2008) (adverse credibility determination supported by finding that claimant engaged in substantial gainful activity after alleged onset date).

18

1      Second, the ALJ rejected Plaintiff's allegations because few, if any, objective findings

2    supported her allegations.  AR 27.  An adverse credibility determination may be based on

3    inconsistencies between a claimant's complaints and the clinical findings.  *Burch v. Barnhart,*

4    *400 F.3d 676, 681 (9th Cir. 2005)*.  Here, for example, the ALJ summarized the treatment records

5    and indicated that they demonstrated Plaintiff's relative stability during the alleged period of

6    disability.  AR 24-26.

7      Third, the ALJ discounted allegations of any psychological disorder, noting that Plaintiff

8    had no demonstrated memory or concentration deficits on examination.  AR 27.  According to

9    the record, Plaintiff complained of decreased memory function in June 2006.  AR 325.  However,

10    on examination in July and November 2006, her memory, mood and affect were repeatedly noted

11    to be normal.  AR 322, 379, 375.  In August 2007, her memory, mood, affect, insight and

12    judgment were normal.  AR 370.  The ALJ could properly consider the discrepancy between

13    Plaintiff's allegation and the clinical findings of her treating physician.  *Batson v. Comm'r of*

14    *Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (district court did not err in affirming

15    ALJ's determination that claimant's testimony was contradictory and unsupported by the

16    objective medical evidence or any persuasive reports of his doctors).

17      Fourth, the ALJ considered that Plaintiff's course of treatment reflected a conservative

18    approach, noting that  her condition remained relatively stable with only the use of diuretics for

19    lower extremity swelling.  AR 27.  Evidence of "conservative treatment" is sufficient to discount

20    a claimant's testimony regarding severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742, 750

21    (9th Cir.2007).  In her opening brief, Plaintiff contends that conservative management "is the

22    only remaining course pending a transplant."  Opening Brief, p. 18.  However, Plaintiff has

23    provided no support for this contention.

24      Fifth, the ALJ discounted her credibility because she missed several medical

25    appointments.[4]  The record demonstrates that Plaintiff missed multiple appointments, she was to

26    _____

27          [4]  The ALJ also faulted Plaintiff for failing to seek any mental health treatment.  As Plaintiff points out, the
     Ninth Circuit has questioned the practice of discrediting a claimant with a mental impairment based on the failure to

28    seek treatment.  In *Nguyen v. Chater*, the court cited the Sixth Circuit's decision in *Blankenship v. Bowen,* where the

be discharged for no shows, but a dismissal letter was never sent, and she was counseled

regarding the critical importance of keeping appointments so as not to be discharged.  AR 318,

382, 384.  A claimant's failure to seek or follow prescribed treatment is a proper basis for finding

her allegations of disabling pain and other symptoms not credible. *Bruton v. Massanari*, 268 F.3d

824, 828 (9th Cir.2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (failure to assert good

reason for not seeking, or following prescribed course of, treatment can cast doubt on claimant's

sincerity): *Mendez v. Astrue*, 2009 WL 3011246, *13 (E.D. Cal. Sept. 17, 2009) (ALJ properly

discounted claimant's testimony in part due to history of several appointment no shows).

Plaintiff posits that the ALJ erred by failing to inquire as to why she missed appointments, but

Plaintiff proffers only speculation as to why she was unable to keep her appointments, such as

possible fatigue, lack of insurance or lack of transportation.  Opening Brief, p. 18.  This

speculation is undermined by a notation in the record that Plaintiff missed at least one

appointment due to a "birthday," and not any of the reasons she has suggested in her brief.  AR

24, 318.

Sixth, the ALJ properly considered that Plaintiff did not suffer debilitating side effects

from her medication.  AR 27.  When making credibility determinations, an ALJ can take into

account such factors as the claimant's adverse side effects from any medication.  Social Security

Ruling ("SSR") 96-7P.  Although Plaintiff testified that she has cramps as "bad side effects"

from her medications, she did not claim that they prevented her from working.  AR 43.  Instead,

she indicated that she could not work due to swelling in her legs and ankles.  AR 41.  The ALJ

did not err in his findings regarding Plaintiff's side effects.

Seventh, the ALJ discounted Plaintiff's credibility because it appeared that she stopped

interferon treatment on her own, regardless of whether the treatment was successful.  AR 27, 94.

---

court invalidated an ALJ's reasons for rejecting a claimant's assertions about his depression.  "'[A]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'".  *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996) (citing *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989)).  The Court finds it unnecessary to address this issue given Plaintiff's failure to challenge the ALJ's determination that her mental impairment was not severe.  Further, even if the ALJ erred by considering her failure to seek mental health treatment, such an error does not invalidate the adverse credibility finding in its entirety.  *Batson,* 359 F.3d at 1197 (upholding ALJ's credibility determination even though one reason may have been in error).

As noted, a failure to follow prescribed treatment is a proper basis for discounting a claimant's credibility. *Bruton*, 268 F.3d at 828.  Plaintiff provides no evidence indicating that she did not stop interferon treatment on her own.

Eighth, the ALJ reported that despite Plaintiff's allegations that she required a liver transplant, her gastroenterologist opined in December 2008 that she was doing well.  AR 27.  The ALJ properly considered the discrepancy between Plaintiff's assertion and the findings of her physician. *Batson*, 359 F.3d at 1196.  According to the record, Plaintiff testified that Dr. Plotzker said she "had end-stage liver disease and will need a transplant."  AR 53.  However, there is nothing in Dr. Plotzker's treatment records supporting a transplant recommendation.

Finally, the ALJ properly considered that Plaintiff's activities of daily living were inconsistent with her reported inability to perform light work.  Specifically, the ALJ noted that Plaintiff's daily activities were "remarkably normal," including grooming, chores, errands, child-care, and attending church twice a week.  AR 27.  An ALJ may base a negative credibility determination on inconsistencies between a claimant's testimony and her daily activities. *Bray v. Comm'r of Sec. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (noting claimant had active lifestyle, including cleaning, cooking, walking her dogs and driving to appointments).

For the reasons discussed above, the ALJ has provided specific, cogent reasons for discounting Plaintiff's credibility.

C.     RFC Finding and Vocational Expert Testimony

As a final matter, Plaintiff asserts that the VE's testimony has no evidentiary value because the ALJ's hypothetical question did not include limitations assessed by Drs. Robinson and Vahamaki.

The hypothetical posed to the vocational expert must accurately reflect the claimant's physical and mental limitations that are determined credible and supported by the record. However, the ALJ may exclude restrictions in the hypothetical that are unsupported by the record or discredited as unreliable. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir.2001); *Embrey*, 849 F.2d at 423; *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir.1991).

1    Here, the Court has determined that the ALJ properly rejected the limitations assessed by

2  Drs. Robinson and Vahamaki.  Accordingly, the ALJ was not required to include these

3  limitations in the hypothetical questions posed to the VE.

4

5                                    **CONCLUSION**

6    Based on the foregoing, the Court finds that the ALJ's decision is supported by

7  substantial evidence in the record as a whole and is based on proper legal standards.

8  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

9  Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in

10  favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff

11  Mary Lou Pacheco.

12    IT IS SO ORDERED.

13  **Dated:   January 13, 2011**                    **/s/ Dennis L. Beck**
                                                UNITED STATES MAGISTRATE JUDGE